# IN THE UNITED STATES DISTRICT COURT FOR THE

## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **LEONARDO CORREA FLORES,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **Case No. CIV-26-292-R** |
| ) | |
| **SCARLET GRANT, Warden of Cimarron** ) | |
| **Correctional Facility; MARKWAYNE** ) | |
| **MULLIN, Secretary of United States** ) | |
| **Department of Homeland Security; TODD** ) | |
| **BLANCHE, Acting United States Attorney** ) | |
| **General,**[1] ) | |
| ) | |
| **Respondents.** ) | |

## <u>REPORT AND RECOMMENDATION</u>

---

[1] Petitioner only named "Warden Dr. Scarlet Grant" as Respondent. (Doc. 1, at 1). "The proper respondent to a habeas petition is the person who has custody over the petitioner." *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (citation modified). Thus, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* at 435. But because United States Immigrations and Customs Enforcement "is in complete control of detainees' admissions and release" and is housed within the Department of Homeland Security, "the Attorney General of the United States [Todd Blanche, Acting] and the Secretary of Homeland Security [Markwayne Mullin]" are also appropriate respondents. *Rafati v. Barr*, Case No. 20-CIV-411, 2020 WL 12968837, at *1 (E.D. Okla. Dec. 22, 2020) (quoting *Calderon v. Sessions*, 330 F. Supp. 3d 944, 953 (S.D.N.Y. 2018)); *cf. Castillo-Hernandez v. Longshore*, 6 F. Supp. 3d 1198, 1212 (D. Colo. 2013) ("[T]his Court concludes that either the Attorney General or [the Department of Homeland Security] Secretary is the proper respondent.").

"If a petitioner names the wrong respondent, this Court may simply substitute the correct party." *Dopp v. McCoin*, No. CIV-18-520-D, 2019 WL 3071984, at *2 (W.D. Okla. Feb. 28, 2019), *adopted*, 2019 WL 1952693 (W.D. Okla. May 2, 2019). The undersigned does so here by adding Markwayne Mullin and Todd Blanche as respondents.

Petitioner Leonardo Correa Flores, a Nicaraguan citizen proceeding *pro se*,[2] filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE").[3]  (Doc. 1).[4]  United States District Judge David L. Russell referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C).  (Doc. 3).  In accordance with the briefing schedule, (Doc. 5), Respondents timely filed a Response in Opposition to Petition for Writ of Habeas Corpus.[5]  (Doc. 7).[6]  Petitioner filed a Reply out of time.  (Doc. 8).  For the reasons set forth below, the undersigned recommends the Petition be **DENIED** because Petitioner is currently subject to mandatory detention.

---

[2] A *pro se* litigant's pleadings are liberally construed "and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  But the court cannot serve as Petitioner's advocate, creating arguments on his behalf.  *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

[3] Petitioner is housed at Cimarron Correctional Facility in Cushing, Oklahoma.  (Doc. 1, at 1).

[4] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

[5] The Response was not filed on behalf of Respondent Scarlet Grant, Warden of the Cimarron Correctional Facility, because she is not a federal official. (Doc. 7, at 1 n.1).  The undersigned concludes that a separate response from Warden Grant is not necessary to resolve this matter.

[6] Respondents are reminded that, pursuant to Magistrate Judge Amanda L. Maxfield's Chamber Procedures for Civil Cases, "Practitioners shall not use footnotes solely for the purpose of citing legal authority. . . .  Improper use of footnotes may result in the filing being stricken or other appropriate sanctions." https://www.okwd.uscourts.gov/sites/okwd/files/ALM_Chamber_Rules.pdf (last visited Apr. 7, 2026).

## I.    Factual Background and Procedural History

Petitioner is a citizen of Nicaragua who entered the United States on or around December 11, 2022.  (Doc. 7, at Ex. 1, at 1).  Petitioner states that on or around December 12, 2022, he received temporary humanitarian parole into the United States.[7]  (Doc. 1, at 7).  On May 21, 2025, ICE issued a Notice to Appear and initiated removal proceedings against Petitioner, stating he was an alien present in the United States who has not been admitted or paroled.  (Doc. 7, at Ex. 2, at 1).  On July 18, 2025, an immigration judge granted ICE's motion to dismiss the removal proceedings without prejudice.  (*Id.* at Ex. 3).  However, ICE immediately thereafter detained Petitioner, (Doc. 1, at 4; Doc. 7, at 2), and on August 22, 2025, issued a new Notice to Appear.[8]  (Doc. 7, at Ex. 4).  On November 13, 2025, ICE received an asylum application from Petitioner.  (*See id.* at Ex. 5, at 3).  However, on November 14, 2025, ICE moved to pretermit Petitioner's asylum application.  (*See generally id.*).  On January 27, 2026, an immigration judge granted ICE's motion under the "safe third country bar."  (*Id.* at Ex. 6, at 1).  That same day, the immigration

---

[7] Respondents state Petitioner "entered the United States without being . . . paroled." (Doc. 7, at 2).  Whether Petitioner was paroled into the United States is ultimately unnecessary to the resolution of the case because the humanitarian parole Petitioner allegedly received is not "regarded as an admission of the alien" and may be revoked "when the purposes of such parole [are], in the opinion of the Secretary of Homeland Security, . . . served."  8 U.S.C. § 1182(d)(5)(A).  If Petitioner was paroled into the United States, this parole presumably was revoked during Petitioner's removal proceedings.  And following revocation, Petitioner's case is treated "in the same manner as that of any other applicant for admission to the United States."  *Id.*

[8] The second Notice to Appear indicated it was "issued after an asylum officer [] found that [Petitioner] ha[d] demonstrated a credible fear of persecution or torture." (Doc. 7, at Ex. 4, at 1).

judge ordered Petitioner removed to Honduras. (*Id.* at Ex. 7, at 3). The removal order indicates that both parties waived appeal of the order. (*Id.* at 4). The instant Petition was filed on February 11, 2026. (Doc. 1, at 8).

## II.    Petitioner's Claims

In Ground One, Petitioner states he has been "detained . . . in excess of six months with no possibility of being removed" in violation of *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). (Doc. 1, at 6). He also complains that ICE ordered him removed to a country to which he has no ties. (*Id.*) In Ground Two, Petitioner states his detention "without any bond hearings where ICE had the burden of proof to show that [he is] a flight risk or a danger to the community" violates his Fifth Amendment due process rights. (*Id.*) In Ground Three, Petitioner states ICE violated its own regulations because it has not "conduct[ed] any custody reviews." (*Id.*) In Ground Four, Petitioner states his arrest and detention were unlawful because Petitioner "was paroled into the United States so [he could] pursue [his] asylum claims" and "ICE arbitrarily arrest[ed] and detain[ed] [him] without any notice." (*Id.* at 7). Petitioner seeks a variety of relief, including a writ of habeas corpus ordering his immediate release from custody. (*Id.*)

Respondents state that Petitioner is subject to mandatory detention and thus has no *Zadvydas* or due process claim. (Doc. 7, at 8-11). Respondents also state that this Court is jurisdictionally barred from reviewing ICE's decisions and actions to detain and remove non-citizens, and that regulatory violations cannot form the basis for habeas relief. (*Id.* at 11-12).

### III.    Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).   "[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . challenges to the lawfulness of immigration-related detention."  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996). "Because mootness is a matter of jurisdiction, a court may raise the issue sua sponte." *Id.*

### IV.    Petitioner Is Currently Detained Within the Removal Period and Subject to Mandatory Detention.

Prior to the entry of a removal order, 8 U.S.C. § 1225 and § 1226 govern the detention of aliens.  An alien detained under § 1226(a) is entitled to a bond hearing at which he can argue to an immigration judge that he should be released while he awaits removal proceedings because he is not a danger to others or at risk for non-appearance.  *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

5

"After the pre-removal period concludes, the statutory authority to detain an alien shifts to 8 U.S.C. § 1231." *Carbajal v. Holder*, 43 F. Supp. 3d 1184, 1188 (D. Colo. 2014). Under 8 U.S.C. § 1231(a)(2)(A), a non-citizen is subject to a 90-day removal period, where detention is mandatory. *Id.* at 1189 ("[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days . . . . During the removal period, the Attorney General shall detain the alien.") (quoting 8 U.S.C. § 1231(a)). This shift from the "pre-removal" period under § 1225 and § 1226 to the "removal" period under § 1231(a) is triggered by the latest of three events:

(i)    The date the order of removal becomes administratively final.

(ii)   If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).[9]  A removal order typically becomes administratively final "upon the earlier of": "a determination by the Board of Immigration Appeals affirming such order" or "the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals."  8 U.S.C. § 1101(a)(47)(B). However, "the decision of the Immigration Judge" may also "become[] final upon waiver of appeal."  8 C.F.R. § 1003.39; *see, e.g.*, *Muradyan v. Warden, Otay Mesa Det. Ctr.*, No. 3:26-cv-63-CAB-AHG, 2026 WL 184206, at *2 (S.D. Cal. Jan. 23, 2026) ("Petitioner was

---

[9] Petitioner has not alleged his removal order is being or has been judicially reviewed and that the reviewing court ordered a stay of removal, nor has he alleged he is presently detained or confined under a non-immigration process.

6

ordered removed on September 30, 2025, and because he waived his right to appeal, his order of removal became administratively final the same day.") (citation omitted).

Thus, Petitioner's pre-removal-order period ended on January 27, 2026, when he was ordered removed and he waived his right to appeal to the BIA. Therefore, Petitioner is presently subject to § 1231(a)(2)(A), which mandates detention without bond for 90 days, or until April 27, 2026.

**V.      Petitioner Is Not Entitled to Habeas Relief on Any of His Claims.**

Liberally construed, Petitioner's claims fall into two buckets: (1) claims related to his 2025 arrest and detention without a bond hearing or notice (Grounds Two and Four), and (2) claims related to his current detention without post-removal-order procedures (Grounds One and Three). For the reasons set forth below, Petitioner is not entitled to relief on any of his claims.

**A.      Claims Relating to Petitioner's Pre-Removal-Order Detention are Moot.**

"Article III of the Constitution limits federal-court jurisdiction to 'cases' and 'controversies.'" *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016) (quoting U.S. Const. art. III, § 2). "In order to invoke federal-court jurisdiction, a [petitioner] must demonstrate that he possesses a legally cognizable interest, or personal stake, in the outcome of the action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (internal quotation marks omitted). This means "an actual controversy must be extant at all stages of review." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997). "If an intervening circumstance deprives the [petitioner] of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be

dismissed as moot." *Genesis Healthcare Corp.*, 569 U.S. at 72 (internal quotation marks omitted). "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted).

Petitioner alleges he has been detained "without any bond hearings." (Doc. 1, at 6). However, because he is currently detained pursuant to § 1231(a)(2)(A), not § 1226(a), Petitioner is not entitled to a bond hearing. Accordingly, Grounds Two and Four should be denied as moot.[10] *See Carbajal*, 43 F. Supp. 3d at 1189 (collecting cases, and stating "[a]pplicant's claims challenging his mandatory detention without an individualized bond hearing during the pre-removal period now are moot because the Board of Immigration Appeals dismissed his administrative appeal on December 27, 2013, thereby affirming the order of removal"); *De La Teja v. United States*, 321 F.3d 1357, 1363 (11th Cir. 2003) ("Because the Attorney General no longer is acting pursuant to § 1226[], it is unnecessary and altogether inappropriate for us to take up the question addressed by the district court."); *Oyelude v. Chertoff*, 170 F. App'x 366, 367 n.4 (5th Cir. 2006) ("Oyelude's challenge to his § 1226 detention was mooted on June 23, 2004[,] when his final removal order was entered and the Attorney General's authority to detain him shifted to § 1231.").[11]

---

[10] The court liberally construes Petitioner's Ground Four claim that he was detained "without any notice" as an additional claim relating to his initial detention that became moot upon his order of removal. (Doc. 1, at 7). However, to the extent this claim is meant to raise a regulatory violation, it should be denied for the same reason as explained *infra* Section IV.B.

[11] A court cannot "dismiss a petition as moot if (1) secondary or collateral injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition

**B.    Petitioner's Remaining *Zadvydas* and Regulatory Violation Claims are Premature.**

"If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall [ordinarily] be subject to supervision."  8 U.S.C. § 1231(a)(3).

> [C]ertain categories of aliens who have been ordered removed, namely, inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well as any alien "who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal[,]" . . .  may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision.

*Zadvydas*, 533 U.S. at 688–89 (quoting 8 U.S.C. § 1231(a)(6)).  "[ICE] regulations add that [ICE] will initially review the alien's records to decide whether further detention or release under supervision is warranted after the 90–day removal period expires." *Zadvydas*, 533 U.S. at 683 (explaining various provisions of 8 C.F.R. § 241.4).

Section 1231 does not specify how long aliens may be detained beyond the removal period.  However, the Supreme Court in *Zadvydas* held that § 1231(a)(6), "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.  It does not permit indefinite detention."  533 U.S. at 689.  The Court further specified that detention is presumptively reasonable for only six months beyond the original 90-day

---

yet evading review; [or] (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time." *Riley v. INS*, 310 F.3d 1253, 1257 (10th Cir. 2002) (internal quotation marks omitted).  "However, none of these exceptions apply to [Petitioner], who has no reasonable expectation that he will once again be detained under 8 U.S.C. § 1226." *Carbajal*, 43 F. Supp. 3d at 1190.

removal period. *Id*. at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. Following the Supreme Court's holding, the *Zadvydas* challenge to continued detention was codified into the immigration regulations governing the detention review process with amendments to 8 C.F.R. § 241.4 and the addition of 8 C.F.R. § 241.13.[12]

As discussed above, Petitioner is subject to mandatory detention under § 1231(a)(2)(A) until his removal period expires on April 27, 2026. While Petitioner has been detained for over six months, none of this time has been in a post-removal-period context, foreclosing his *Zadvydas* claim. Similarly, Petitioner's regulatory claim fails because the custody review he seeks falls under 8 C.F.R. § 241.4, which only applies to non-citizens "beyond the removal period." *Id.* § 241.4(a); *see id.* § 241.4(k)(1)(i) (first

---

[12] *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967-01, 56968, 2001 WL 1408247(F.R.) (Nov. 14, 2001) (to be codified at 8 C.F.R. pts. 3, 241) ("In light of the Supreme Court's decision in *Zadvydas*, this rule revises the Department's regulations by adding a new 8 CFR 241.13, governing certain aspects of the custody determination of a detained alien after the expiration of the removal period. Specifically, the rule provides a process for the Service to make a determination as to whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future. Except as provided in this new § 241.13, the existing detention standards in § 241.4 will continue to govern the detention or release of aliens who are subject to a final orders of removal. Thus, aliens who are determined not to be a danger to the community or a flight risk may be released under § 241.4 regardless of whether there is a significant likelihood of removal.").

custody review need only be conducted "[p]rior to the expiration of the removal period").

Thus, the undersigned recommends that these claims also be denied as premature.[13]

## VI.   Recommended Ruling and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 1) be **DENIED**.

**The court advises the parties of their right to object to this Report and Recommendation by April 22, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[14]   The Court further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein.   *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

---

[13] Nothing in this Report and Recommendation prevents Petitioner from realleging his *Zadvydas* and regulatory claims if he remains detained into the post-removal period in violation of the law.

[14] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) (noting that "[t]he Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 8th day of April, 2026.


_____
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE